## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER TAYLOR, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| BBQ HOLDINGS, INC., JEFFERY CRIVELLO, CHARLES E. DAVIDSON, PETER O. HAEG, RACHAEL MAGA, and BRYAN L. WOLFF, | **COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. | **JURY TRIAL DEMAND** |

Plaintiff Christopher Taylor ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against BBQ Holdings, Inc. ("BBQ Holdings" or the "Company") and BBQ Holdings' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to MTY Food Group Inc. through its wholly owned subsidiary MTY Franchising USA, Inc. and its wholly owned subsidiary Grill Merger Sub, Inc. (collectively "MTY").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on August 24, 2022. The 14D-9 recommends that BBQ Holdings stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby BBQ Holdings is acquired by MTY. The Proposed

1

Transaction was first disclosed on August 9, 2022, when BBQ Holdings and MTY announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which MTY will acquire all of the outstanding shares of common stock of BBQ Holdings for $17.25 per share (the "Merger Consideration"). The deal is valued at approximately $200 million and is expected to close by the fourth quarter of 2022.

3.      The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the financial projections prepared by BBQ Holdings management, the financial analyses conducted by Kroll, LLC, operating through its Duff & Phelps Opinion Practice ("Kroll"), BBQ Holdings' financial advisor, potential conflicts of interest faced by Kroll and Company insiders, and the background of the Proposed Transaction.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to BBQ Holdings' stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of BBQ Holdings.

6.      Defendant BBQ Holdings is a corporation organized and existing under the laws of the State of Minnesota. The Company's principal executive offices are located at 12701

Whitewater Drive, Suite 100, Minnetonka, Minnesota 55343. BBQ Holdings common stock trades on the Nasdaq Global Select Market under the ticker symbol "BBQ."

7.      Defendant Jeffery Crivello has been Chief Executive Officer and a director of the Company since 2017.

8.      Defendant Charles E. Davidson has been a director of the Company since 2020.

9.      Defendant Peter O. Haeg has been a director of the Company since 2017.

10.      Defendant Rachael Maga has been a director of the Company since 2021.

11.      Defendant Bryan L. Wolff has been a director of the Company since 2015.

12.      Nonparty MTY Food Group Inc. is a corporation established under the laws of the Canada Business Corporations Act with its principal executive offices located at 8210 Transcanada Highway, Saint-Laurent, Quebec, H4S 1M5, Canada.

13.      Nonparty MTY Franchising USA, Inc. is a Tennessee corporation and is a wholly owned subsidiary of MTY Food Group Inc.

14.      Nonparty Grill Merger Sub, Inc. is a Minnesota corporation and is a wholly owned subsidiary of MTY Franchising USA.

**JURISDICTION AND VENUE**

15.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

16.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

17.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

18.    BBQ Holdings is an international restaurant company engaged in the business of franchising, and operating casual and fast casual dining restaurants. As of August 9, 2022, BBQ Holdings had multiple brands with over 100 company-owned locations and over 200 franchised locations, including ghost kitchens operating out of the kitchen of another restaurant location or shared kitchen space.

19.    On August 8, 2022, the Company entered into the Merger Agreement with MTY.

20.    According to the press release issued on August 9, 2022 announcing the Proposed Transaction:

**MTY Food Group Inc. to Acquire Bbq Holdings, Inc. for $17.25 Per Share**

Montreal, Aug. 09, 2022 (GLOBE NEWSWIRE) -- MONTREAL, August 9th, 2022 - MTY Food Group Inc. ("MTY" or the "Company") (TSX:MTY) and BBQ Holdings, Inc. ("BBQ Holdings") (NASDAQ:BBQ) today announced they have entered into a definitive merger agreement (the "Merger Agreement") under which MTY would acquire all of the issued and outstanding common shares of BBQ Holdings for cash consideration of US$17.25 per BBQ Holdings share representing total transaction value of approximately US$200 million (C$257 million) (the "Transaction"), including BBQ Holdings' net debt. The terms and conditions of the Merger Agreement were unanimously approved by the Boards of Directors of both companies. The Transaction is subject to customary closing conditions including receipt of applicable regulatory approvals. Upon completion of the Transaction, BBQ Holdings will become a subsidiary of MTY and the shares of BBQ Holdings will be de-listed from NASDAQ.

BBQ Holdings is a franchisor and operator of casual and fast casual dining restaurants across 37 states in the U.S., Canada, and United Arab Emirates. Its flagship restaurant brands operate under the "Famous Dave's", "Village Inn",

"Barrio Queen", and "Granite City", banners. As of August 9, 2022, BBQ Holdings operates over 200 franchised and over 100 corporate-owned restaurants. For the 2022 fiscal year ending January 1, 2023, and as publicly disclosed by BBQ Holdings, the company is expected to generate twelve-month run-rate system sales and cash EBITDA between US$685M to US$725M and US$25.5M and US$27.5M, respectively.

MTY is a leading franchisor in the North American restaurant industry. As of May 31, 2022, its network had 6,660 locations in operation, 99% of which are franchised. The Company established its presence in the U.S. with the acquisition of Kahala Brands in July 2016 and has since continued to grow its footprint in the country through new restaurant openings and acquisitions. With this Transaction, MTY will add leading restaurant brands to its network which will reach a total of approximately 7,000 locations, including over 3,900 in the United States.

"This transaction represents another key acquisition for MTY as we further scale and enhance our existing U.S. portfolio through the addition of nine unique brands. The transaction combines highly complementary businesses, including BBQ Holdings' exciting casual and fast casual brands. BBQ Holdings' restaurants are well established within each of their respective markets with a strong network of franchise partners, well-run corporate owned locations, and a best-in-class management team. We are excited about the prospects of adding BBQ Holdings' brands to the MTY family and we look forward to welcoming Jeff Crivello and his team and their franchise partners," commented Eric Lefebvre, Chief Executive Officer of MTY.

Jeff Crivello, Chief Executive Officer of BBQ Holdings, commented "We are thrilled to partner with MTY and its talented team of restaurant operators. Over the past four years we have significantly grown revenue and our restaurant portfolio while building a world-class team of entrepreneurs. We look forward to continuing the execution of our three pillars of growth, which we believe align very closely with MTY's vision. With more than 80 brands, MTY brings vast buying power and a team of industry leaders who will provide additional support to our franchise partners. As our founder Dave Anderson says, we strive to deliver famous experiences with our 'yes is the answer, what's the question' hospitality."

**Transaction Highlights**

- Adds well-established quality brands to MTY's portfolio of restaurants
  - 9 new restaurant brands adding to MTY's portfolio
  - System sales expected to exceed C$4.8B in aggregate following the Transaction based on BBQ Holdings projected sales representing an increase of 23% compared to MTY's current levels
- Further expands MTY's geographic footprint in the United States
  - Broadens MTY's U.S. footprint with over 3,900 locations in the country, representing an increase of 9% in locations

- MTY's system sales from the U.S. expected to increase from 58% to 66% of total system sales post Transaction
- Diversifies MTY's restaurant concepts with greater exposure to casual dining and fast casual dining concepts
  - Casual dining and fast casual dining concepts expected to increase from 29% of current MTY system sales to 43% of MTY's total pro forma system sales at transaction close
  - BBQ Holdings' brands bring a complementary restaurant concept mix while reducing the level of seasonality of the business
- Highly talented management and employee base
  - Seasoned management team with a strong operational track record and history of successful M&A
  - Supported by a well-established organizational structure and experienced employee base
- Expected to be immediately accretive to MTY's free cash flow per share
  - The Transaction represents a 7.5x multiple of BBQ Holdings' mid-point FY2022E run-rate cash EBITDA guidance of US$26.5M

**Transaction Financing**

The Transaction is not subject to any financing condition and the consideration will be 100% funded in cash. MTY will use its cash on hand and its existing credit facility to fund the cash consideration and to repay BBQ Holding's net debt outstanding as of the close of the Transaction.

MTY's pro forma Net Debt / EBITDA (excluding leases) expected to stand at approximately 2.4x upon closing, which remains within a comfortable zone offering good flexibility should more opportunities surface in the near future.

**Transaction Details**

Under the terms of the Merger Agreement, a subsidiary of MTY will commence a tender offer to purchase all of the outstanding shares of BBQ Holdings common stock for US$17.25 per share in cash. The tender offer is subject to customary conditions, including antitrust clearance and the tender of a majority of the outstanding shares of BBQ Holdings common stock. Following successful completion of the tender offer, MTY would acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

The Transaction is expected to close by Q4, 2022. There is no assurance the Transaction will be completed as described above or at all, or that the anticipated closing date will materialize. Following the close of the Transaction, the shares of BBQ Holdings will be de-listed from NASDAQ, BBQ Holdings will become a privately held subsidiary of MTY, and its restaurants will continue to be operated as independent brands.

**Transaction Approvals & Support**

The Transaction has been unanimously approved by the board of directors of MTY and has the unanimous support of the BBQ Holdings board of directors. Certain key shareholders of BBQ Holdings have signed support agreements in favor of the Merger Agreement, representing in aggregate approximately 37% of the shares currently outstanding. The consummation of the Transaction is conditioned upon, among other things, the tender of at least 50% of BBQ Holdings fully-diluted shares of common stock and receipt of applicable regulatory approvals.

**B.   The Materially Incomplete and Misleading 14D-9**

21.     On August 24, 2022, Defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

> ***Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts***

22.     The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of Kroll's fairness opinion, Kroll reviewed "internal documents relating to the history, current operations, and probable future outlook of the Company, including run-rate EBITDA and financial projections for the fiscal year ended January 1, 2023, provided to Kroll by management of the Company." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that BBQ Holdings' management provided to the Board and Kroll.

23.     Notably, the 14D-9 fails to disclose material information relating to BBQ Holdings' financial forecasts, specifically the run-rate EBITDA and financial projections for the fiscal year ended January 1, 2023.

24.     This omitted information is necessary for Plaintiff to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

**_Materially Incomplete and Misleading Disclosures Concerning Kroll's Financial Analyses_**

25.     With respect to the *Selected Publicly Traded Companies* analysis, the 14D-9 fails to disclose the objective selection criteria for each company, as well as the specific financial multiples and metrics for each company.

26.     With respect to the *Selected Transactions* and the *Company Acquisitions* analyses the 14D-9 fails to disclose the objective selection criteria for each transaction, as well as the financial multiples and metrics for each transaction.

**_Materially Incomplete and Misleading Disclosures Concerning Potential Conflicts of Interest_**

27.     The 14D-9 fails to disclose potential conflicts of interest faced by Kroll, specifically it does not disclose what portion of Kroll's $350,000 compensation fee was "payable upon the Company's engagement" and how much was "payable upon Kroll informing the Company or the Board that Kroll was prepared to deliver the Opinion."

28.     The 14D-9 also fails to disclose material information concerning potential conflicts of interest faced by Company insiders, specifically whether any Company management obtained or expected to obtain employment for the surviving company and if any of MTY's proposals or indications of interest discussed whether any members of Company management would remain active in the combined company.

**_Materially Incomplete and Misleading Disclosures Concerning the Background of the Proposed Transaction_**

29.     The 14D-9 fails to disclose information about confidentiality agreements entered into between the Company and parties to the sales process. The 14D-9 does not disclose the terms

of the standstill provisions, whether the standstill provisions are still in effect or have been waived, and which of the parties cannot make a superior proposal for the Company. The disclosure of the terms of any standstill provisions is crucial to Plaintiff being fully informed of whether his fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

30.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

31.     In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

32.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

33.     Further, the 14D-9 indicates that on August 4, 2022, Kroll reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to BBQ Holdings stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material

9

information concerning Kroll's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

34.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting BBQ Holdings stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

37.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of BBQ Holdings, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

38.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

39.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-

9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of BBQ Holdings shares and the financial analyses performed by Kroll in support of its fairness opinion; (iii) potential conflicts of interest; and (iv) the background of the Proposed Transaction.

40.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that Kroll reviewed and discussed its financial analyses with the Special Committee on August 4, 2022, and further states that the Board considered Kroll's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

41.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of BBQ Holdings within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of BBQ Holdings and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

46.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their

input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

C.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 2, 2022                   **ROWLEY LAW PLLC**


                                           *S/ Shane T. Rowley*
                                           Shane T. Rowley (SR-0740)
                                           Danielle Rowland Lindahl
                                           50 Main Street, Suite 1000
                                           White Plains, NY 10606
                                           Tel: (914) 400-1920
                                           Fax: (914) 301-3514
                                           Email: srowley@rowleylawpllc.com
                                           Email: drl@rowleylawpllc.com

                                           *Attorneys for Plaintiff*